## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 13-10058-MLB |
| | ) | |
| ELEDRIA BRADLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM AND ORDER

This case comes before the court on defendant's renewed motion for judgment of acquittal. (Doc. 28). The motion has been fully briefed and is ripe for decision. (Docs. 29, 30, 31). Following a jury trial, defendant was convicted on Count 1 of an indictment charging wire fraud and aiding and abetting in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2.

## I.  Analysis

Pursuant to Fed. R. Crim. P. 29(a), a defendant may move for judgment of acquittal at the end of the government's case-in-chief. Defendant did so in this case and the court reserved its decision pursuant to Rule 29(b). Defendant now renews her motion after the verdict and asserts that the evidence was insufficient to sustain a conviction. In determining the sufficiency of the evidence, the court must view all evidence, together with the reasonable inferences to be drawn, in the light most favorable to the government. United States v. Swanson, 360 F.3d 1155, 1162 (10th Cir. 2004).

Facts

    In 2002, defendant lived in Chandler, Arizona, with her parents. After graduating from high school in 2002, defendant moved to her grandparents' home in Wichita, Kansas. In 2004, defendant enlisted in the Kansas Air National Guard. On November 14, 2008, defendant married Gary Bradley in Wichita. On February 4, 2009, defendant was issued Title 32 orders to report for annual training on April 6. At some point in February 2009, defendant and her husband visited defendant's father in Arizona. Defendant returned to Wichita and did not leave any items with her father. On February 18, defendant was issued Title 10 orders[1], calling her to duty with the United States Air Force on April 10, 2009. The orders listed defendant's duty station as McConnell Air Force Base in Wichita.

    At the time the orders were issued, defendant's home of record (HOR) was Wichita, Kansas. On April 9, 2009, defendant accessed her virtual record on a computer using the Virtual Military Personnel Flight (VMPF) system. The VMPF is a web site where a member may perform human resources functions. While accessing the VMPF, Defendant changed her address from Wichita, Kansas, to her father's address in Chandler, Arizona. The change was transmitted to a server in San Antonio, Texas.[2] Defendant did not move any items to Arizona

---

[1] A Title 32 order is issued by a state, in this case Kansas, and a Title 10 order is issued by the United States.

[2] Defendant spends a significant amount of time on the issue of whether defendant could, under military regulations, change her HOR while under orders. Shellie Armstrong, a comptroller, testified initially that a 2011 regulation forbid a change of HOR while a member was under orders. Armstrong, on redirect, stated that she was incorrect as to the date of the regulation. She then testified that the regulation was in effect in 2008 and, therefore, defendant was not

on this date. Defendant did not inform her father that she was moving to his home in Arizona.

When defendant was called to duty, under either Title 10 or 32 orders, she received a salary and a Basic Allowance for Housing (BAH). The BAH is dependent on the location of the member's HOR. The BAH for Wichita is less than the BAH for Arizona. In addition to BAH, a member is paid a lodging and per diem benefit if the member lives outside the commuting distance to the duty station.

In early April, was also issued orders to be deployed overseas. Gary Bradley then gave a sixty-day notice of intent to vacate to the apartment manager. On April 10, 2009, defendant's orders became effective and defendant was sent to El Paso, Texas, for training. As a result of the change of HOR, defendant received higher pay due to an increase in her BAH. At this time, however, defendant did not receive the additional lodging and per diem benefit because defendant was provided lodging at the training base. The training was to prepare defendant and her unit to be deployed to Saudi Arabia. Defendant, however, was not deployed to Saudi Arabia due to an injury she suffered while training in Texas. Defendant returned to Wichita on April 30 and was placed under medical orders, meaning defendant could not be released from her post at McConnell until she was cleared

_____

entitled to change her address in April 2009.

Defendant argues that the regulations were not clear to defendant and the evidence showed that defendant believed she was able to access her record and change her HOR. The court does not see the significance of defendant's argument. Even if defendant could change her address, the issue before the jury was whether the address listed by defendant was a false and material statement and was made in furtherance of a scheme to obtain money from the government using false pretenses.

by a medical review board.

Defendant's travel voucher shows that defendant "stayed with family" from April 30 until May 21, 2009. (Exh. 17). Defendant received a per diem in the amount of $13.80 each day but did not receive additional lodging expenses. On May 22, defendant began receiving lodging and per diem in the amount of $129 a day. (Exh. 18). At the end of May, defendant's father came to Wichita to assist defendant and her husband move items from the apartment to a storage unit. The storage unit contained furniture, military uniforms, and defendant's medical records.

Defendant was stationed at McConnell until she was medically discharged from the military on April 23, 2011. During those two years, defendant received per diem and lodging expenses of approximately $54,000.

On January 30, 2013, defendant was interviewed by Agent Dodge at the leasing office of her apartment complex in Wichita, Kansas. Defendant agreed to the interview with Dodge and there is no evidence that the statements made during the interview were involuntary. The interview consisted of questions regarding defendant's HOR and travel vouchers. Initially, defendant claimed that her HOR should be Virginia because she had left some property there with an ex-boyfriend. Defendant also stated that her HOR was in Chandler, Arizona because she was planning to move there and she had taken a load of property to Arizona to leave at a friend's house. Upon further questioning, defendant admitted that she changed her HOR to Arizona in order to receive additional BAH and that she in fact had been living in Wichita at the time of the change of HOR.

-4-

<u>Elements of Section 1343</u>

The jury instructions on count 1 provided as follows:

The indictment charges defendant with a violation of 18 U.S.C. section 1343. This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud and/or obtain money by means of false or fraudulent pretenses, or representations.

To find the defendant guilty of this crime you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

First: the defendant devised or intended to devise a scheme to obtain money by means of false or fraudulent pretenses, or representations; that is, she falsely reported her address via virtual MPF in order to obtain lodging expenses and per diem from the United States;

Second: the defendant acted with specific intent to obtain money by means of false or fraudulent pretenses, or representations;

Third: the defendant used interstate wire communication facilities for the purpose of carrying out the scheme.

Fourth: the scheme employed false or fraudulent pretenses, or representations that were material.

(Jury Inst. 5).

<u>Analysis</u>

Although defendant has not couched her argument in terms of a variance, the court has considered defendant's argument in that context. A variance exists when the evidence at trial establishes facts different from those alleged in the indictment. <u>United States v. Bailey</u>, 327 F.3d 1131 (10th Cir. 2003); <u>United States v. Rosalez</u>, 711 F.3d 1194 (10th Cir. 2013). Some cases distinguish between a "simple variance" and a "fatal variance." The distinction is explained in <u>United States v. Williamson</u>, 53 F.3d 1500, 1512-13 (10th Cir. 1995), <u>cert. denied</u> 516 U.S. 882 (1995), as follows:

Case law recognizes two different types of variances, similar in kind and different in degree. The first type of variance, referred to as a simple variance, occurs when the charging terms are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. The second type of variance, known as a constructive amendment of the indictment, is more dangerous than a simple variance because it actually modifies an essential element of the offense charged, thereby effectively altering the substance of the indictment.

With respect to the prohibition against simple variances, which is at issue in this case, we note the mere fact that a variance occurred does not automatically warrant relief. Where a simple variance exists, convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment. This follows from the fact that the prohibition against variances is designed to insure notice of the charges; thus, a variance, without more, will not warrant relief as long as the proof corresponds to an offense clearly charged in the indictment because the defendant will have had notice of that charge and cannot claim prejudice.

But when the variance rises to the level of a fatal variance, relief is appropriate. A variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy.

Id. (internal citations and quotations omitted).

Defendant's argument is that the evidence was insufficient to prove that she falsely reported her Arizona address to obtain lodging and per diem, to which she was not entitled, but which is what the indictment charged. Rather, the evidence at trial showed that by reporting an Arizona address, she received BAH benefits, to which she was not entitled. Defendant does not contend that she was entitled to BAH benefits. Rather, defendant asserts that the evidence was insufficient to demonstrate fraudulent intent.

If there is a variance, it is of the "simple" variety. Defendant does not argue that she was misled by the basic charge, i.e. that she

devised a scheme to defraud by falsely reporting her address to obtain benefits. She does not assert that she was prejudiced by the distinction between lodging and per diem benefits as opposed to BAH benefits; e.g. that she would have prepared for and tried the case differently had the indictment alleged a fraudulent scheme to obtain BAH benefits. In other words, the scheme is the same, the dollar amount of the benefits received is the same - only the name of the benefits is different. She does not claim that her lack of fraudulent intent defense would have been different. She does not raise the specter of double jeopardy - i.e. that the government now will be able to bring a separate case charging BAH benefits.

Finally, defendant did not object to the elements instruction which used the words "lodging and per diem," thereby following the indictment's wording.

In short, defendant has not shown that her substantial rights were affected by the variance. <u>See</u> <u>United States v. Ailsworth</u>, 138 F.3d 843, 848 (10th Cir. 1998), <u>cert. denied</u> 525 U.S. 896 (1998).

<u>Sufficiency of the Evidence</u>

The court will now turn to the elements of the crime to determine if there was sufficient evidence for the jury to find that defendant intended to commit fraud by devising a scheme to defraud the United States.

The first element requires the government to prove beyond a reasonable doubt that defendant devised a scheme to obtain money by false pretenses. The facts clearly show that defendant did not live in Chandler, Arizona, with her father. At no point did defendant leave her personal possessions at the address she listed as her HOR

in April 2009.  On that date, defendant continued to live at her apartment in Wichita with her husband.  Moreover, defendant admitted that she changed her HOR in order to receive additional money from the government.  Therefore, there was sufficient evidence to conclude that defendant devised a scheme to obtain money by false pretenses.

The court further finds that there was sufficient evidence that the jury could have reasonably found that defendant acted with specific intent to defraud.  In this case, the jury was presented with defendant's admission that she made the false statement in order to receive funds that she should not have received.  United States v. Welch, 327 F.3d 1081, 1105 (10th Cir. 2003)(an intent to defraud under section 1343 may be inferred from the knowledge of a false statement.)

The evidence at trial was also sufficient to meet both the third and fourth elements.[3]  Defendant used the internet to transmit the change of HOR, establishing the requirement that defendant used interstate wire communications to carry out the scheme.  The evidence at trial also established that the false statement was material.

## Conclusion

The court finds that sufficient evidence exists to support the guilty verdict.  Defendant's motion for acquittal (Doc. 28) is denied. Defendant's sentencing will be held on January 6, 2014, at 11:00 a.m.

IT IS SO ORDERED.

Dated this ___25th___ day of October 2013, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

---

[3] Defendant's motion does not challenge the third and fourth elements of the crime.

-8-